IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KENNETH D. LESLIE, #156 048, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) CIVIL ACTION NO.:  2:12-CV-58-MHT | |
| | )            [WO] | |
| OFFICER LORENZO GREENE, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Plaintiff Leslie, a state inmate presently incarcerated at the Frank Lee Youth Center Deatsville, Alabama, challenges the constitutionality of actions taken against him during his incarceration at the Easterling Correctional Facility ["Easterling"].  He contends that on January 1, 2012, his constitutional rights were violated when he was  subjected both to an excessive use of force and a failure to be protected from the use of force. Leslie further alleges a due process violation regarding a disciplinary infraction issued against him following the January 1, 2012, incident. Named as defendants are Correctional Officers Lorenzo Greene ["Greene"] and Dennis Durry ["Durry"]. Leslie seeks injunctive relief, damages, legal  costs, attorneys fees, and requests trial by jury. *Doc. Nos. 1, 14*.

Defendants  filed  special  reports  and  supporting  evidentiary  materials  addressing Leslie's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to treat the special reports as  motions for summary judgment. *See Doc. Nos. 9,*

*28.* This case is now pending on Defendants' motions for summary judgment. Upon consideration of such motions, the evidentiary materials filed in support thereof, and Leslie's responses in opposition to these motions, the court concludes that Defendants' motions for summary judgment are due to be granted.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact

---

[1] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

or by showing the nonmoving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id.* at 322-324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Leslie to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required [by citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. Consequently, to survive Defendants' properly supported motions for summary judgment, Leslie is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims for relief. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (internal citations omitted). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."

*Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs likewise cannot create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (Leslie's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond his own conclusory allegations challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a Leslie fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the Leslie will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 323 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the Leslie presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the*

*Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citations omitted). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and establishes the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a

*pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Leslie's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Leslie fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## II. DISCUSSION

On January 1, 2012, Greene pepper sprayd Leslie twice. Leslie maintains Greene's conduct amounted to excessive force because his actions, which comprised making threatening statements, did not reach a "threat level per D.O.C. regulations" requiring Greene's use of pepper spray under the circumstances. *Doc. No. 1*. In an amendment to the complaint, Leslie claims Durry failed to protect him from Greene's use of force when this officer watched Greene pepper spray him twice and failed to intervene. *Doc. No. 14*.

Greene indicates that at approximately 2:15 a.m. he was escorting Leslie from Dorm C2 to the lobby with his property. When Leslie began cursing Greene the guard ordered him to stop. Leslie kept on, however, stating "You fucked my life up. I won't make parole now. I'm going to fuck you up." Greene again directed Leslie to stop at which time Greene states Leslie shoved a laundry cart into him and walked towards him stating "I'm going to fuck you up!" Greene pulled out his Sabre Red pepper spray, yelled "Gas!" and sprayed a one second burst at Leslie's face. Leslie commented "Is that all you fucking got?" and continued to advance towards the officer. Greene sprayed Leslie again in the face at which time he

stopped his actions. Durry, a Dorm C1 rover, handcuffed Leslie. *Doc. No. 7, Greene Affidavit.*

Durry, while roving Dorm C1 heard a commotion at approximately 2:15 a.m. coming from the C-Dorm lobby. He looked in the lobby and observed Leslie sitting at a table being loud, disrespectful, and insubordinate to Greene.  Durry then watched Leslie take off his coat and lunge at Greene who yelled "Gas!" and sprayed Leslie in the face as the inmate lunged at the officer. After being sprayed, Durry watched Leslie fall back onto the table and state "That's all you got?"  Leslie got up from the table and walked towards Greene at which time Durry saw Greene spray Leslie again. Durry states three other correctional officers entered C-Dorm lobby at 2:20 a.m. Leslie then complied with Durry's request to turn around to the rear to be handcuffed.  *Doc. No. 26, Durry Affidavit.*

Leslie was taken to the health care unit for assessment and decontamination at 2:35 a.m. Medical personnel observed that Leslie had "bilateral red eyes."  The effects from the pepper spray were visible on his face and neck area also red. Medical personnel released Leslie to DOC custody at 2:55 a.m.  *Doc. No. 7, Exhs. 2, 3.*

Defendants' evidentiary material includes the DOC incident report and a use of force investigative report. The incident report reflects that Leslie's conflict with Greene began shortly before 2:00 a.m. when the guard observed Leslie off his assigned bed. Greene reported the incident to Sergeant Kerry Williams who told Greene to escort Leslie to the shift commander's office. After questioning Leslie about his conduct in the dorm Sgt. Williams reprimanded him and told him to pack his belongings because he was being moved to the

restricted privileges dorm-Dorm C1.  The remainder of the report depicts the incident in similar fashion to  Greene's description of the events as stated in his affidavit but reflects that besides stating "Is that all you fucking got," after he was initially sprayed, Leslie also stated "I'm going to fucking kill you."  *Doc. No. 7, Exh. 3*.

Captain Nathaniel Lawson prepared a use of force investigative report on January 6, 2012, after interviewing Leslie, Greene, and Durry. He made the following determinations:

> Captain Lawson['s] investigation revealed that Inmate Leslie was mad and upset wit[h] Officer Greene about being placed in Dorm C1. Inmate Leslie was threatening to cause bodily harm to Officer Green. Inmate Leslie walked toward Officer Greene with his fists clenched. Officer Greene Yelled, "Gas" and sprayed a one second burst of Sabre Red Chemical Agent to the facial area of Inmate Leslie. Inmate Leslie continued to walk toward Officer Greene and threaten[ed] to kill him. Officer Greene sprayed Inmate Leslie with a second burst of Sabre Red Chemical Agent. Inmate Leslie was restrained by Officer Durry, and no other force was used.

*Doc. No. 7, Exh. 5* at 1.

Captain Lawson recommended a finding that the use of force was justified. To support his recommendation Captain Lawson noted that Leslie pushed a laundry cart at Greene, Greene feared Leslie would cause him bodily harm, and Leslie was sprayed a second time because he continued to walk towards Greene in a threatening manner. *Doc. No. 7, Exh. 5* at 2.

## A.  *Injunctive Relief*

Leslie requests declaratory and injunctive relief against Defendants, s*ee Doc. Nos. 1, 14,* but he is no longer incarcerated at Easterling.  The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief.  *See  County of Los Angeles v.*

*Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). Therefore, his requests for equitable relief are moot.

*B. Excessive Force Claim*

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson*, 503 U.S. 1, 8 (1992). The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id*. (internal quotations omitted). Regarding the objective component, a Leslie must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. (internal quotations omitted). Not every malevolent touch by a prison official amounts to a deprivation of constitutional rights. *Id*. at 9. Summary applications of force are constitutionally permissible when prison security and order, or the safety of other inmates or officers, have been placed in jeopardy. *Whitley*, 475 U.S. at 312.

In extending *Whitley* to all cases involving allegations of force, the *Hudson* Court reasoned:

Many of the concerns underlying our holding in *Whitley* arise whenever guards

use force to keep order.  Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates.  Both situations may require prison officials to act quickly and decisively.  Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

503 U.S. at 6 (citations omitted).With these concerns in mind, the *Hudson* Court set out certain factors that should be considered in evaluating whether the use of force was wanton and unnecessary.  They include: 1) the extent of the injury suffered by the inmate; 2) the need for the application of force; 3) the relationship between the need and the amount of force used; 4) the threat reasonably perceived by the prison official; 5) any efforts made to temper the severity of a forceful response.  *Id.* at 7-8.  "From consideration of such factors, 'inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'  *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)."  *Skrtich v. Thornton*, 280 F.3d 1295, 1300-1301 (11th Cir. 2002). The *Hudson* Court made it clear that the extent of the injury suffered by the inmate is only one of the many factors which should be considered, not a decisive one when it said, "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."  503 U.S. at 7. "An inmate who is gratuitously beaten by  guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury" *Wilkins v.*

*Gaddy*, 556 U.S. 34, 38 (2010).

There is no dispute among the parties that Leslie was in an agitated state about being moved to the restricted privileges dorm and was being very vocal about it in the C-Dorm lobby. It is also undisputed that Greene ordered Leslie to stop his verbal agitation and threatening remarks and that Leslie disobeyed the order by stating he would not shut up, and that Greene could not make him shut up. Leslie then made additional comments that the guard was "fucking [his] life up for nothing;" he was "waiting for work release," and "you [Greene] just want to fuck up my life over a mistake." *Doc. No. 18 at Exh. A.* Greene agrees that Leslie made these statements but asserts the inmate also said "I'm going to fuck you up." *Doc. No. 7, Exh. 1.* Green again ordered Leslie to be quiet, but alleges Leslie again failed to comply with this order and walked towards him and shove a laundry cart at him while stating "I'm going to fuck you up!" *Doc. No. 7, Exh. 1.* Leslie contends it was Greene who approached the table where he was sitting and moved the laundry cart containing Leslie's property off to the side at which time Leslie stated to him "I see how you are, I see thru [sic] you. You let them violate and play poker, watch fuck-movies, and run around late, but you want to fuck-up the White man for anything you can." *Doc. No. 18, Exh. A.* Greene then sprayed Leslie with a one second burst of pepper spray. *Id.; Doc. No. 7, Exh. 1.*

While there is some disagreement among the parties whether Leslie was sitting at the table or walking towards Greene when the guard initially sprayed him, Leslie concedes that he had failed to comply with repeated directives from Greene he cease his defiant and belligerent behavior and then continued this conduct by stating to Green"You just fucked up.

I'll sue your ass now, and fuck you up. Is that all you got?"[2]  *Doc. No. 18, Exh. A; see also Doc. No. 7, Exh. 1, 5; Doc. No. 26, Exh. B*. Defendants maintain that Leslie was walking towards Greene when he stated "Is that all you got?" *Doc. No. 7, Exhs. 1, 5*. Greene responded by macing Leslie a second time.[3] *Doc. No. 18, Exh. A, Doc. No. 7, Exh. 5, Doc. No. 26, Exh. B*.

Leslie argues that Defendant Greene's use of  a chemical agent amounted to an excessive force under the circumstances.  He maintains his conduct  during the incident in question did not warrant the level of force used by Greene and also violated Department of Corrections' policy for use of pepper spray. *Doc. No. 18*. Leslie acknowledges expressing his displeasure over being moved to the restricted privileges dorm but  insists his behavior did not warrant  Greene's decision to pepper spray him. *Id*.

---

[2]Leslie submitted the affidavit of an inmate he alleges witnessed the incident between him and Officer Greene. An affidavit is "[a] voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths," such as a notary public. Black's Law Dictionary 62 (8th ed. 2004). In this instance, the undersigned finds the affidavit signed by innmate Charles Coldiron and submitted by Leslie as Exhibit B in his opposition to Defendant Greene's dispositive motion (*see Doc. No. 18*) is not a valid affidavit upon which the court  may rely because the affidavit is neither sworn under penalty of perjury nor does it  contain the notary public's stamp or seal. *See Doc. No. 18, Exh. B*. Under 28 U.S.C. § 1746, a declaration that is signed "under penalty of perjury" is sufficient to constitute evidence for purposes of a motion for summary judgment. Because the witness affidavit Leslie submitted was not signed "under penalty of perjury," it is not a sworn affidavit or a declaration which can be considered in the determination of Defendants' dispositive motions. *See Holloman v. Jacksonville Housing Auth*., 2007 WL 245555 at *2 (per curiam) ("unsworn statements, even from *pro se* parties, should not be 'consider[ed] in determining the propriety of summary judgment'") (quoting *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir.1980) (per curiam)); *see Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981).

[3]The information Leslie provided to Captain Lawson for his investigative report indicates that even after Greene pepper sprayd him a second time he had still not ceased his threatening comments and manner by stating to  Greene he was going to kill him at which time Durry restrained him. *Doc. No. 7, Exh. 5*; *see also Doc. No. 7, Exh. 1*.

As explained, Defendants have denied Leslie's allegations regarding the use of force, in this instance a chemical agent, and maintain Greene did not use force maliciously and sadistically to cause Leslie harm. *Doc. Nos. 7, 26*. Rather, Greene maintains he pepper sprayd Leslie because he felt sufficiently threatened by the inmate after he shoved a laundry cart at the him and walked towards him in a hostile manner. *Doc. No. 7*. Thereafter, Leslie manifested a further aggressive posture and intent by asking Greene "Is that all you got?" prompting Greene's decision to pepper spray Leslie again. *Id*.

In evaluating the challenged conduct of prison officials, a court must keep in mind the paramount concerns of maintaining order and discipline in an often dangerous and unruly environment. *Ort v. White*, 813 F.2d 318, 322 (11th Cir. 1987). "[I]f force was applied in a good faith effort to maintain discipline, courts should give great deference to acts taken by prison officials in applying prophylactic or preventative measures intended 'to reduce the incidence of riots and other breaches of prison discipline.'" *McBride v. Rivers*, 170 Fed.Appx. 648, 656 (11th Cir. 2006) (unpublished) (quoting *Williams v. Burton*, 943 F.2d 1572, 1576 (11th Cir. 1991));[4] *see Rhodes v. Chapman*, 452 U.S. 337, 351 (1981) (in considering whether the Eighth Amendment has been violated, courts must be mindful that such inquiries "'spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.'") (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)). While this deference "'does not insulate

---

[4]Pursuant to Eleventh Circuit Rules 36-2, 36-3, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority.

from review actions taken in bad faith or for no legitimate purpose, it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice.'" *Ort*, 813 F.2d at 322 (quoting *Whitley*, 475 U.S. at 322). Where the only question concerns the reasonableness of the force used by a prison official, the defendant will ordinarily be entitled to judgment as a matter of law. *See Campbell*, 169 F.3d at 1374 (explaining that "force does not violate the Eighth Amendment merely because it is unreasonable or unnecessary. . . '[T]he core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' ") (citations omitted); *McBride*, 170 Fed.Appx. at 657 (although correctional officers could arguably have used less force after subduing inmate, inmate "failed to produce evidence showing that these measures were taken 'maliciously and sadistically for the very purpose of causing harm.'") (citations omitted).

The court finds the evidence insufficient to support a finding that Greene used force "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline." *See Hudson*, 503 U.S. at 7. In reaching this conclusion the court finds that the need for the application of force was established by Leslie's repeated refusals to comply with Greene's orders and his threatening remarks coupled with a clearly agitated state. Greene's application of a chemical agent "in order to gain control of [the inmate] and force him to comply with [his] orders" is not excessive force. Rather than comply with Greene's directives to cease his unruly conduct, Leslie refused and continued with his "boisterous" language including cursing loudly and making verbal threats at Greene both

-14-

before and after  Greene initially pepper sprayd him. *Doc. No. 18, Exh. A*. "Prison guards

may use force when necessary to restore order and need not wait until disturbances reach

dangerous proportions before responding." *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th

Cir.1990).  Use of chemical agents by prison officers on disruptive prisoners is not *per se*

unconstitutional. *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008) ( *overruled in part*

*on other grounds, Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010)) ("Pepper spray is an

accepted non-lethal means of controlling unruly inmates."); *Spain v. Procunier*, 600 F.2d

189, 196 (9th Cir. 1979) ("use of nondangerous quantities of [tear gas] in order to prevent

a perceived future danger does not violate 'evolving standards of decency' or constitute an

'unnecessary and wanton infliction of pain.'").  "And prison guards do not have the luxury

or obligation to convince every inmate that their orders are reasonable and well-thought out.

Certainly they are not required to do so where an inmate repeatedly fails to follow those

orders." *Danley*, 540 F.3d at 1307.

Second, the relationship between the need for force and the amount of force used,

weighs against a finding of a constitutional violation as "[a] short burst of pepper spray is not

disproportionate to the need to control an inmate who has failed to obey a jailer's orders."

*Danley*, 540 F.3d at 1307; *Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002 ("Courts

have consistently concluded that using pepper spray is reasonable ... where the Leslie was

... refusing police requests."). Leslie does not dispute he failed to comply with Greene's

directives before the first burst of pepper spray and thereafter continued not to follow the

guard's orders prompting the officer's second application of pepper spray.  *Sanchez*,

*McCra*y, 349 Fed.Appx. 479, 483 (11th Cir.2009) (use of pepper spray against inmate who refused to comply with officers' orders was permissible use of force).

Third, the evidence fails to demonstrate that Greene's use of pepper spray had as its objective an intent to punish rather than the legitimate government objective of restoring order and control. While Leslie complains he lost visibility and suffered breathing difficulties from the chemical agent, *Doc. No. 18, Exh. A*, the body chart evaluation made shortly after the incident reflects Leslie's eyes, face, and neck were red from the pepper spray but otherwise does not reflect he had any other effect or injury. *See Danley*, 540 F.3d at 1308 (quoting *Vinyard*, 311 F.3d at 1348) ("Any injuries or discomfort [Leslie] suffered as a necessary result of a dose of pepper spray were neither substantial nor long lasting", as pepper spray "'is designed to disable a suspect without causing permanent physical injury.'"). Following decontamination, Leslie was released to DOC custody and processed into administrative segregation pending disciplinary action. *Doc. No. 7, Exhs. 2, 3*.

Regarding the fourth use of force factor, the court finds the extent of the threat reasonably perceived by Greene on the basis of facts known to him would reasonably permit the use of some force to compel Leslie's compliance with the orders of a prison official. Leslie's belief that his conduct and actions did not rise to a threat level sufficient to warrant any use of force by Greene misses the mark.  Leslie's refusal to abide repeated orders along with his  agitated state and threatening manner, even if such conduct did not amount to an immediate threat of physical harm to Greene, did not make the guard's actions in spraying Leslie unreasonable, especially where his paramount concerns involve the interests of

preserving security, order, and safety not only of himself but also other prison personnel and inmates. *See Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984) ("When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger.").  Further, Greene's actions in promptly reporting the incident to his supervisors so Leslie could be treated for the effects of the pepper spray undermines Leslie's contention that the guard engaged in the conduct complained of solely to inflict punishment.

Lastly, Greene's use of pepper spray rather than making physical contact with Leslie suggests a tempered response to the situation. The amount of force used by Greene was limited to no more  than necessary to regain control of the situation.  *See Nasseri v. City of Athens*, 373 Fed.Appx. 15, 18 (11th Cir. 2010) (guards are "permitted to use some force in controlling the situation and preventing it from escalating.").

The decision to pepper spray Leslie does not appear to the court to have been excessive under the circumstances. As explained, the existence of "a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives" is not enough to support a claim of excessive force in an institutional setting. *Campbell*, 169 F.3d at 1375 (*citing Whitley*, 475 U.S. at 322).  Further, Leslie has failed to demonstrate more than *de minimis* injury. He was decontaminated for the effects of pepper spray immediately after the incident with Greene.  There is no evidence he sustained  other effects or injury from the two short bursts of pepper spray.  Leslie's relatively *de minimis*  injuries from the effects of the pepper spray and all other facts and circumstances governing the January 1,

2012, incident, establish that Greene's administration of pepper spray to Leslie's facial area amounted to no more than a *de minimis* use of force. *Cf. Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts."). The court concludes that Defendant Greene is entitled to summary judgment on Leslie's Eighth Amendment excessive force claim.

## C.  Failure To Protect

Leslie maintains Durry acted with deliberate indifference by failing to protect him from Greene's use of excessive physical force in the C-Dorm Lobby. *Doc. No. 14*. Durry denies failing to protect Leslie from a use of force because Greene's conduct did not amount to a use of force against Leslie committed maliciously or sadistically for the very purpose of causing him harm. *Doc. No. 26*. Rather, Durry contends Greene used that amount of force necessary to bring Leslie under control and, Durry did not fail to protect Leslie from an excessive use of force. *Id.*

Here, the court has determined that Greene's conduct in macing Leslie did not amount to an excessive use of force. Accordingly, Leslie's failure to intervene claim against Durry entitles him to no relief as this officer "had no attendant obligation to intervene." *Crenshaw v. Lister*, 556 F.3d 1283, 1294 (11th Cir. 2009) (holding that because officer who applied force did not violate arrestee's right to be free from excessive force, the non-intervening officer had no attendant obligation to intervene). Defendant Durry is entitled to summary judgment on Leslie's failure to protect claim.

## D.  Due Process

Because of the incident between Leslie and Greene on January 1, 2012, Leslie received disciplinary infractions for violating Rule # 44- threats - and Rule # 56 - failure to obey a direct order of a prison official. A  disciplinary hearing on the charges was held on January 5, 2012. The hearing officer found Leslie guilty of both rule violations. On January 10, 2012, Warden Sconyers approved the hearing officer's determination regarding the finding of guilt for Leslie's violation of Rule #56. He disapproved the finding of guilt regarding the charge against Leslie for violating Rule #44.  *Doc. No. 7, Exh. 6.*

Leslie alleges a violation of his right to due process during his disciplinary proceedings because Greene's testimony at the hearing differed from the written statement he submitted on the disciplinary report which, he claims, ultimately led to the Warden's disapproval of the infraction issued against him for violating Rule #44. *Doc. Nos. 1, 34*. To the extent Leslie argues  Greene issued a false disciplinary infraction against him for making threats, he is entitled to no relief.

Prison inmates have no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may cause the deprivation of a protected liberty interest. *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986); *see also Collins v. King,* 743 F.2d 248, 253 (5th Cir. 1984) (prisoner's claim he was falsely "charged with things he did not do," standing alone, states no due process claim). The undisputed evidence before the court reflects Leslie had the benefit of the minimum procedural due process protections set forth in *Wolff v. McDonald*, 418 U.S. 539 (1974), regarding the infraction in question where he was given the opportunity to rebut the charge against him. *Doc. No. 7, Exh. 6*. That Leslie

endured disciplinary proceedings for an infraction where the initial finding of guilt was ultimately disapproved does not rise to the level of a constitutional violation. *See generally Sandin v. Conner*, 515 U.S. 472 (1995).

Leslie also alleges a general due process violation regarding Greene's use of pepper spray asserting that the officer violated ADOC policy based on the manner and circumstances under which he deployed his chemical agent. *See Doc. No. 1; Doc. No. 18* at 7. Leslie's conclusory allegation supports no constitutional claim for relief as the mere failure of an official to follow an agency regulation or state law, without more, does not amount to a federal due process violation. *See Snowden v. Hughes*, 321 U.S. 1, 11 (1944); *Murray v. Mississippi Dept. of Corrections*, 911 F.2d 1167, 1168 (5th Cir.1990); *Williams v. Nix*, 1 F.3d 712, 717 (8th Cir.1993). *Cf. Bell v. Wolfish*, 441 U.S. 520, 543 n. 27 (1979) (noting that correctional standards recommendations by various organizations and associations "may be instructive in certain cases" but that "they simply do not establish the constitutional minima; rather, they establish goals recommended by the organization in question."). Defendants are entitled to summary judgment on Leslie's due process claims.

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1. Leslie's request for injunctive relief (*Doc. No. 1*) be DISMISSED as moot;

2. Defendants' motions for summary judgment (*Doc. Nos. 7, 26*) be GRANTED;

3. Judgment be ENTERED in favor of Defendants and against Leslie.

It is further

ORDERED that on or before **January 26, 2015**, the parties may file an objection to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised this Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit Court of Appeals handed down prior to the close of business on September 30, 1981.

Done this 12th day of January, 2015.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE